Curia, per Butler, J.
The reason of a rule will generally direct its proper application. An indorser of a bill, or note, undertakes to pay it, on condition that the maker should fail to do so on the day on which it is legally due and payable, which is the last day of grace. To ascertain whether the maker will pay, a demand is generally necessary, with a view of giving notice to the indorser of non-payment; otherwise, the indorser might be lulled into a false security, and might lose an opportunity of using such means as were in his power to indemnify himself. There are many instances where an actual demand, on the day, cannot be made. In such cases, the holder should give prompt notice to the indorser, when that is practicable. The notice to the indorser is of more importance than a demand on the maker, where circumstances will not allow an actual demand. No rule of law is so inexorably in *191 flexible as to admit of no relaxation or exception. There are some circumstances which would not only render a demand unavailing, but an effort to make one, revolting. Suppose a holder and an indorser of a note, to live in the neighborhood of a city that had been destroyed by an earthquake, and the maker to be involved in the common ruin, would the law require the holder to go to the lake of ruins and go through the form of making a demand, with the purpose of fixing the liability of the indorser 1 In the case before the court, it appears that the maker of the note and his whole family were buried on the day before the last day of grace, on which the note was legally made payable. According to the testimony, nota white inhabitant of his household survived; and yet it is said a demand should have been made on a tenantless house, or at some of the public offices. I ask for what end should this have been done ? It was impracticable and legally impossible that any demand could have been made. The plaintiff, on the trial, proved the negative, that the maker left no will; and it was legally impossible that there could have been an administrator to represent him, on the 25th, when demand should have been made; on whom then could the demand have been made ? It is said that it should have been made at the house of the deceased. Who was there to make any answer to the call of the dunner? He might have rung the bell, or rapped with the knocker, and the only response would have been the echo of the sound in deserted chambers. As the counsel for plaintiff remarked, the notary might as well have clamoured at the recent grave. It was a mockery to make a demonstration of demand, when there was no one, to receive and answer to it. The law is reasonable in its requirement. Lex neminem cogit ad vana seu impossibilia. The plaintiff did what was obviously reasonable, and what common sense dictated, and that which the law sanctioned. He advertised the defendant, by express notice, that the note was not paid on the 25th, and that he would hold .him liable. The defendant was well acquainted with all the circumstances that would excuse the want of demand, and assented to his liability to pay the note. It is said, however, that the notice was not legally sufficient, and was premature. The notice was explicit that the note was not then paid, to wit, on the 25th, nor likely to be paid; and surely *192 it was not necessary to recapitulate in it the fact of the 'maker’s death. That would be to suppose that the notice could give more information than the defendant had, who attended the funeral of the deceased. When a note is not paid on the day, the earlier the notice to the indorser, the better, so far as it could answer any purpose. An indorser may well complain that he has received no notice, or one that came to him too late; but it can rarely be a cause of complaint that it is too promptly given. If the defendant had received no notice at all, or one that was given after the time when he could have made exertions to save himself, he might well have complained' and demanded exemption. When a demand cannot be made, that fact should be communicated to the indorser within a reasonable time, and an omission to do so may well be taken advantage of by him, as was properly held in the case of Price v. Young, 1 N. & M'Cord. Rep. 438. It was supposed that the above case is conclusive of the question in this; so far from it, in my opinion it is different from the one before the court in many essential particulars. The most striking difference is, that in one there was no notice to the indorser, and in the other there was.— In the case of Price and Young, the note was legally payable on the 26th October, and no notice was given to the indorser until some time in November; this was held to be equivalent to no notice at all. In this case, on the contrary, notice was given on the last day of grace, and when it was ascertained that the note would not be paid. The striking difference between the cases does not end here: In the first case, Bryce, the maker, died in September, more than a month before the note fell due. Within that time his estate might have had a representative appointed by the law, who could answer to the demand. When one dies, administration is usually taken out on his estate within six or eight weeks after his death. This is the probability. Hence an inquiry at the public office might not be unavailing; but it is very different where not more than twenty-five hours have elapsed after one is put in the tomb; within that time no one could possibly be an administrator. In the case of Price and Young, Judge Cheves seems to concede, that if it had been proved that the maker was a transient person, having no residence, it would have been a suffi *193 cient excuse for not making a demand, provided that fact was communicated to the indorser by notice. When it is apparent that the maker has left no one in his house, at his death, to represent him, and there was not sufficient time for the law to make a representative, it would be more impossible to make a demand than on a transient person having no residence. Upon the whole, we are satisfied with the circuit decision and refuse the motion.
Gantt, O’Neall, Evans and Earle, Justices, concurred.